## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Edward M.-R., by and through his Parents, T.R.-M. and E.M. of Washington, D.C., | : : : |
| Plaintiff | : Civil Action No. : |
| v. | : : |
| DISTRICT OF COLUMBIA of Washington, D.C. Defendant | : : : : |

## **COMPLAINT**

### I. **Preliminary Statement**

1. This appeal from an administrative proceeding is brought by Edward M.-R. ("Edward"), a 13-year-old minor child with disabilities, and his Parents, T.R.-M. and E.M. (collectively referred to as "Plaintiffs" or the "Family"), against defendant District of Columbia ("D.C." or "Defendant"). The Family brings this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and its federal and state implementing regulations; D.C. Code Title 38 Subtitle VII, and D.C.M.R. Title 5 Chapter E30.

2. Edward is a student who at all relevant times was enrolled in the District of Columbia Public Schools ("DCPS"). He is identified as a student with Multiple Disabilities as defined by the IDEA due to Autism Spectrum Disorder ("Autism" or "ASD") and Attention Deficit / Hyperactivity Disorder ("ADHD"). Edward has been provided with Special Education supports through an Individualized Education Program ("IEP") while enrolled in DCPS.

3. Edward's disabilities are complicated. He has extreme difficulties with

1

communication, has repetitive movements, utterances, and behaviors known as stereotypies, has long functioned well below grade level, and makes slower progress than typical peers. It is and always has been particularly challenging for Parents to know what sort of progress he is capable of, and what sort of educational plan is appropriate for him.

4. During the 2018-19 school year, Edward's classmate repeatedly touched him inappropriately in his crotch and buttocks in the bathroom at school. Because of Edward's communication deficits, it is hard to say how many times this occurred. Thereafter, his anxiety level appeared to increase, while his reported progress appeared to slow. Therefore, his Parents requested that DCPS update Edward's evaluation. The updated Evaluation Summary Report ("ESR"), issued in the fall of 2019, demonstrated Edward's regression in numerous areas.

5. Therefore, Edward's Parents initiated a Special Education Due Process Hearing via a Due Process Complaint filed on June 19, 2020 on his behalf, seeking an award of full days of compensatory education for DCPS's educational failures; an order that DCPS develop an appropriate program for Edward; and reasonable attorneys' fees and costs. DCPS initially filed a motion to dismiss, asserting that all claims before two years prior to the filing of the complaint should be barred. See 20 U.S.C. §§ 1415(b)(6)(B) and (f)(3)(C). Parents answered that, because they were laypersons, they did not possess sufficient knowledge to realize that DCPS was violating Edward's right to a free, appropriate public education ("FAPE"), until DCPS's November 23, 2019 ESR clarified Edward's stark lack of educational progress.

6. The presiding Hearing Officer, Michael Lazan, held a first hearing session on August 19, 2020, solely devoted to the statute of limitations issue. In an Order dated September 4, 2020, he found that the date on which Parents knew or should have known that DCPS was denying Edward FAPE was prior to two years before the Family filed its complaint on June 19, 2020. The

Family does not appeal the September 4, 2020 order, except as follows.

7.     Instead of excluding only claims prior to June 19, 2018, two years prior to the complaint's filing, the Hearing Officer also decided to exclude any claims pertaining to the IEP that was in place on June 19, 2018 (that of November 2017, which was not replaced until November 2018). Order, 9/4/20, at 18. Counsel for the Family sought reconsideration, but the Hearing Officer denied that request. See Hearing Officer Determination ("HOD"), October 23, 2020, at 20 n.2. The Family appeals that exclusion.

8.     Following four further hearing dates, the Hearing Officer found in his October 23, 2020 Decision that DCPS did not deny FAPE, primarily because he found testimony of an expert was required to address the multiple issues regarding the IEPs, evaluations, and implementations of programming -- while the Family, which could not afford an expert, was unable to present one. See, e.g., HOD at 22-23, 26, 32, 36.

9.     The HOD's time-bar ruling was incorrect in failing to consider the November 2017 IEP as implemented between June 19, 2018 and November 2018, and the HOD erred in failing to find DCPS denied Edward FAPE and in failing to award compensatory education to Edward. The present Complaint seeks reversal of the HOD in these regards; development and implementation of an appropriate program and placement; an award of compensatory education; and an award of attorneys' fees as the prevailing party.

**II.    Parties**

10.    Edward was born in 2007 and has been at all relevant times a resident of D.C. and enrolled in DCPS and/or eligible for DCPS services. T.R.-M. and E.M. are Edward's Parents and have resided at all relevant times with Edward within the District of Columbia.

11.    DCPS is located at 1200 First Street, NE, Washington, DC 20002. DCPS is the

recipients of several sources of federal funds and is an educational agency designated by the District of Columbia State Board of Education for the provision of educational services to individuals residing within its boundaries. Such services include those mandated under IDEA as well as the District of Columbia's statutory/regulatory scheme concerning students with disabilities. For purposes of this appeal, the District of Columbia is the entity responsible for Edward's education, and the actions of DCPS are attributable in their entirety to the District of Columbia.

### III. Jurisdiction and Venue

12. This Court has original jurisdiction over this appeal pursuant to 28 U.S.C. § 1331 because this case raises federal questions under IDEA and Section 504.

13. Plaintiffs have exhausted their administrative remedies where required under 20 U.S.C. § 1415(l), having timely pursued a Special Education Due Process Hearing.

14. The family's claims and remedies are authorized by 20 U.S.C. § 1415 as well as under 28 U.S.C. §§ 2201 and 2202, providing for declaratory and any further relief deemed necessary and proper.

15. All the Defendant's actions complained of herein have taken place within the jurisdiction of the United States District Court for the District of Columbia. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

### IV. Additional Facts Supporting Liability

16. Edward is currently an eighth-grade student and, for his 2020-2021 school year, were it not for the pandemic, would be attending DCPS's Hardy Middle School. Since schools closed in response to the public health emergency, he has been attempting to access remote services through this school with only minimal success.

17. Edward has been a student enrolled in DCPS since age 2.5. Edward's pediatrician diagnosed him with Autism at age 18 months. Around the same time, he had two severe ear infections that required placement of tubes for draining. At age 2.5, Edward began attending preschool at John Borroughs Elementary School, and he has received specialized instruction ever since, first at Borroughs, then Ludlow Taylor Elementary School, Hearst Elementary School, Alice Deal Middle School, and now Hardy Middle School, all within DCPS.

18. Since his entry into DCPS, DCPS has continuously provided Edward with inappropriate special education programming and services based upon insufficient evaluations, inappropriate IEPs, and improper implementation. As a result, Edward has failed to make meaningful educational progress.

19. Over the course of his education, DCPS has attempted to meet Edward's needs in multiple settings, yet it has continuously failed to appropriately educate Edward, as evidenced by his regression in multiple educational areas. Edward's academic achievement scores have decreased dramatically from June 19, 2018 to the present.

20. Edward's IEPs have been insufficient to appropriately meet his needs from 2018 to the present. A comparison of Edward's IEPs in effect from June 19, 2018 to the present (1/28/17 IEP, 11/27/18 IEP, and 11/25/19 IEP) shows the following deficiencies, among others:

- A dramatic decrease in speech/language therapy services, despite a noted lack of progress in pragmatic language skills;
- Increasing Edward's time spent outside general education without an accompanying increase in programmatic supports to provide him with the research-based instruction needed to make meaningful educational progress;
- Cutting occupational therapy service hours in half;
- Goals and objectives that are repetitious, unmeasurable, and do not clearly align with Edward's needs or present levels of educational performance;
- Lack of appropriate present educational levels;

- Failure to appropriately address significant needs in self-advocacy, social skills, pragmatic language, and functional academics; and
- Failure to offer meaningful, research-based Specially Designed Instruction, but rather offering undefined instruction which is not research-based.

21. Even with these inadequacies, DCPS was unable to faithfully implement these insufficient IEPs. As a result of all these problems, he did not make appropriate educational progress, if any, but regressed academically.

22. In addition to the deeply concerning lack of educational progress, Edward has also been physically harmed while under DCPS's supervision. Over the first half of the 2018-19 school year, Edward's classmate repeatedly touched him inappropriately in his crotch and buttocks in the bathroom at school. Because of Edward's communication deficits, it is hard to say how many times this occurred. As a result, Edward has also shown regression in his social, emotional, and behavioral development.

23. Due to DCPS's failures, the Family on June 19, 2020 filed a Due Process Complaint seeking full days of compensatory education from 2015 until such time that DCPS develops an appropriate program and placement for Edward; immediate development of an appropriate program and placement for Edward; and reasonable attorneys' fees and costs.

24. Before the evidentiary hearing in this matter, DCPS filed a partial motion to dismiss, seeking dismissal of allegations arising more than two years prior to the filing of the Due Process Complaint. The evidentiary hearing was held before Hearing Officer Michael S. Lazan in five sessions, the first being solely devoted to the statute of limitations argument. The Hearing Officer issued his order regarding the statute of limitations on September 4, 2020, and his HOD on October 23, 2020.

### V. **Statutory Authority**

25. The purpose of the IDEA is to ensure "all children with disabilities have available

to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); see Endrew F. v. Douglas County School Dist. RE-1, 137 S. Ct. 988 (2017).

26. The mechanism employed to provide FAPE is an IEP. See 20 U.S.C. § 1412(4). A FAPE must be provided "under public supervision and direction, ... meet the standards of the State educational agency, ... include an appropriate preschool, elementary school, or secondary school education in the State involved ... [and must be provided at] no cost to Parents." Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 524-25 (2007) (citing 20 U.S.C. § 1401(9) and (29)). IDEA and the regulations thereunder, 34 C.F.R. §§ 300.100 et seq., require Local Educational Agencies ("LEAs"), such as DCPS, to provide disabled children with a FAPE, plus Due Process procedures to effectuate that right. An IEP must be developed for each child with a disability within the LEA's jurisdiction. Middleton v. D.C., 312 F. Supp. 3d 113, 121 (D.D.C. 2018).

27. The Third Circuit follows the same approach to the statute of limitations as is applicable in this District. Damarcus S. v. D.C., 190 F.Supp.3d 35, 43-47 (D.D.C. 2016) (discussing and adopting approach of G.L. v. Ligonier Valley Sch. Dist. Auth., 802 F.3d 601 (3d Cir.2015)). Under that approach, if a complaint is *not* filed within two years of the date the parent(s) knew or should have known of the violation, "all but the most recent two years before the filing will be time-barred." G.L., 802 F.3d at 620.

28. All denials of FAPE occurring within two years of the filing of even an untimely due process complaint, such as having in place an inappropriate IEP -- even if that IEP was developed outside the two years -- are thus within the scope of a due process hearing, and the Hearing Officer erred in deciding otherwise. The Third Circuit's interpretation of these provisions

in B.B. v. Delaware College Preparatory Academy, 803 Fed. Appx. 593 (3d Cir. 2020) (not precedential), is particularly instructive. There, the Third Circuit found that the district court erred in dismissing claims that occurred within two years before a filing that was beyond the two-year "knew or should have known" date under the IDEA's statute of limitations. The Court found that petitioner "does not seek to sweep expired claims into a single continuing violation. Rather he limited his request for relief to violations that took place…within the two-year time period before filing the…due process complaint." B.B., 803 Fed. Appx. at 597. Just so here.

29. The IEP is the cornerstone of the special education program for a student. Honig v. Doe, 484 U.S. 305, 311 (1988). The IDEA mandates that every IEP include:

- a statement of the child's present levels of academic achievement and functional performance;
- a statement of measurable annual Goals;
- a description of how the child's progress toward meeting the annual Goals will be measured and when periodic reports on the progress the child is making toward meeting the annual Goals will be made;
- a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child or on behalf of the child;
- a statement of the program modifications or supports for school personnel that will be provided to enable the child to advance appropriately toward attaining the annual Goals, to be involved in and make progress in the general education curriculum; and
- an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in activities.

20 U.S.C. §1414(d); 34 C.F.R. § 300.320.

30. The IDEA provides that an IEP team, which includes both school officials and the child's parents, must develop an appropriate educational program and placement for each eligible child through an IEP. A two-pronged analysis applies in reviewing a school district's IEP development under the IDEA: (1) whether the school district complied with the procedures set

forth in the IDEA; and (2) whether the IEP developed through the IDEA's procedures is reasonably calculated to enable the child to receive *meaningful* educational benefit. Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206-207 (1982); Endrew F., 137 S. Ct. at 999; Smith v. District of Columbia, 846 F. Supp.2d 197, 202 (D.D.C. 2012); A.I. v. District of Columbia, 402 F. Supp.2d 152, 167 (D.D.C. 2005).

31. The benefit must also be provided in the least restrictive environment ("LRE") appropriate to the child's needs, with the disabled child participating to the "maximum extent appropriate" in the same activities as his or her non-disabled peers. 20 U.S.C. § 1412(a)(5)(A); see also 34 C.F.R. § 300.114; Olu-Cole v. E.L. Haynes Pub. Charter Sch., 930 F.3d 519, 522 (D.C. Cir. 2019).

32. Furthermore, Congress in its latest reauthorization of the IDEA expressly clarified that the goal of the Act goes beyond mere access but encompasses meaningful expectations for further education, employment, and independent living. 20 U.S.C. § 1400 (2004). The preamble to IDEA-2004 makes this focus abundantly clear:

> [T]he implementation of [the IDEA] has been impeded by low expectations, and an insufficient focus on applying replicable research on proven methods of teaching and learning for children with disabilities....[T]he education of children with disabilities can be made more effective by having high expectations for such children...in order to meet developmental goals and, to the maximum extent possible, the challenging expectations that have been established for all children; and be prepared to lead productive and independent adult lives, to the maximum extent possible....

20 U.S.C. § 1400(c)(4)-(5)).

33. When a District fails to provide FAPE, it is well-settled that compensatory education is an available remedy for the student. Reid ex rel. Reid v. D.C., 401 F.3d 516 (D.C. Cir. 2005); Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt, 583 F. Supp. 2d 169, 171 (D.D.C. 2008).

9

34. The Hearing Officer erred in finding that Edward's IEPs were appropriate and provided Edward with a FAPE. In fact, Edward's IEPs were entirely inappropriate, and it is clear that they failed to provide Edward with a FAPE. Moreover, the Hearing Officer erred in insisting that an expert be presented, where the legislative history of IDEA establishes that due process was intended to be a less formal, user-friendly, parent-centered process, and not the rigid and formalized procedure envisioned by the Hearing Officer, whereby indigent Parents are somehow required to find an expert witness to testify on their behalf, even though the IDEA has been held by the United States Supreme Court to not provide for reimbursement of expert witness costs. Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291 (2006).

35. The Hearing Officer erred in not considering Edward's documented lack of educational progress in determining that his IEPs were appropriate. Evidence of a student's actual progress is an important consideration in determining whether a challenged IEP was reasonably calculated to confer educational benefit. Damarcus S. v. D.C., 190 F. Supp. 3d 35, 54 (D.D.C. 2016).

36. In the present case, Edward has made minimal, if any, educational progress during his *entire* time in DCPS. Edward's IEPs contained the same unmeasurable goals year after year, which establishes a prima facie case as a matter of law that Edward failed to make educational progress during the many years he was educated in DCPS. See Damarcus S., 190 F. Supp. 3d at 52 (discussing Roark ex rel. Roark v. D.C., 460 F. Supp. 2d 32, 44 (D.D.C. 2006) (academic success an important factor in determining whether IEP is reasonably calculated to provide educational benefits). Based on Edward's *years* of lack of educational progress and other factors, it is clear that his IEPs were not appropriate.

37. The Hearing Officer incorrectly found that Edward's IEPs were appropriate despite

their failure to provide for research-based instruction in *any* area of need, and in their failure to provide appropriate descriptions of the instruction that Edward would receive. For an IEP to be appropriate, it must at least supply a *minimal* description of the instruction that the student will be receiving, including that it is research-based. Endrew F., 137 S. Ct. at 1000; Middleton v. D.C., 312 F. Supp. 3d 113, 152 (D.D.C. 2018). Edward's IEPs abjectly failed in this critical aspect of IDEA.

38. The Hearing Officer further erred in excusing deficiencies in the IEP as either "procedural" or asserting that "a competent special education teacher could easily figure out a way to measure a goal" or to implement the undefined Specially Designed Instruction. But IEPs must be implemented not only by competent special education teachers, but also by regular education teacher, aides, and less than fully competent special education teachers – and must be understandable and specific for layperson Parents to understand and follow up upon outside of the school-day program.

39. Because the HOD finding that Edward was not deprived of a FAPE should be reversed, this Court should also enter an award of full days of compensatory education for the period at issue. Because DCPS's failures were pervasive, and affected Edward's entire learning experience, the Hearing Officer should have awarded full days of compensatory education. See B.D. v. D.C., 817 F.3d 792, 798 (D.C. Cir. 2016) ("To fully compensate a student, the award must seek not only to undo the FAPE denial's affirmative harm, but also to compensate for lost progress that the student would have made."); Reid ex rel. Reid v. D.C., 401 F.3d 516, 522 (D.C. Cir. 2005) (award of compensatory education must follow a "fact-specific" inquiry and be "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.").

40. The IDEA provides that an aggrieved party has the right to bring a civil action in federal district court, which conducts an independent review of the administrative record and any additional evidence presented by the parties. See 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516(c)(3). The district court must give "due weight" to the administrative proceedings, but the findings of fact and ultimate determination as to whether the state has complied with the IDEA are made by the district court. Z.B. v. D.C., 888 F.3d 515, 523 (D.C. Cir. 2018); Long v. D.C., 780 F. Supp. 2d 49, 57 (D.D.C. 2011).

41. Moreover, IDEA permits recovery of reasonable attorneys' fees by parents who prevail in an action or proceeding thereunder. 20 U.S.C. § 1415(i)(3)(B); 34 C.F.R. § 300.517; Price v. D.C., 792 F.3d 112, 113 (D.C. Cir. 2015).

42. IDEA clearly requires an independent review of the administrative HOD and permits a court to grant the relief sought by Plaintiffs, since the statute expressly endows courts with broad authority to grant "such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(A); 34 C.F.R. § 300.516(c)(3). The IDEA further provides that federal courts hearing such matters "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii).

## VI. Prayer for Relief

WHEREFORE, the Plaintiffs respectfully request that this Court:

1. Assume jurisdiction over this action;

2. Hear additional evidence as appropriate pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii);

3. Reverse the HOD of the Hearing Officer, including his exclusion of claims falling within the two-year period;

4. Order the Defendant to develop and implement an appropriate program and placement.

5.  Order the Defendant to provide compensatory education to Plaintiffs as set forth herein;

6.  Order that Plaintiffs may use any and all compensatory education awarded without a time limit, and that Edward and his Parent may use any and all awarded compensatory education for any educational purpose, at Plaintiffs' discretion;

7.  Declare the Defendant's actions and omissions to be violative of IDEA and District of Columbia law;

8.  Order that the Defendant pay reasonable attorneys' fees; and

9.  Grant such other relief as this Court deems proper.

Respectfully submitted,

*Caitlin E. McAndrews*

Caitlin E. McAndrews, Esquire
McANDREWS, MEHALICK, CONNOLLY,
HULSE AND RYAN, P.C.
100 N. Pitt Street, Suite 200
Alexandria, VA 22314
(202) 735-2300 (phone)
(202) 296-3190 (fax)

30 Cassatt Avenue
Berwyn, PA 19312
(610) 648-9300 (phone)
(610) 648-0433 (fax)

Attorneys for Plaintiffs